And we'll proceed to the next case on our oral argument calendar, Plancarte-Tofolla v. Garland. You may proceed. Thank you, Your Honor. Lamar Peckham appearing for Mr. Plancarte-Tofolla. Your Honors, like most immigration lawyers, when Pereira came down from the Supreme Court, I filed many motions to dismiss, to terminate the lack of jurisdiction, won a lot of those at the immigration court, and they were all overturned on appeal. It seemed to me that the issue was really closed unless it went up to the issue of an invalid NTA went up to the Supreme Court again. But then I was reading the statute again very closely, and I noticed really for the first time that element four of the notice to appear is treated very differently than any other element required for the notice to appear. It does specify at least 10 days continues for respondent to obtain counsel, but then it says in section 239b-3, nothing in this subsection may be construed to prevent the attorney general from proceeding against the alien pursuant to section 240 if the 10 days have elapsed and the alien has failed to secure counsel. Now, obviously, if the attorney general is able to continue the proceeding and prosecuting it, the court is adjudicated, which means the court has jurisdiction. So what this section is saying, and it also says there doesn't say anything about any limitation as to why the alien doesn't have secured counsel. It could be for any reason, apparently, even maybe that it wasn't mentioned in the notice to appear. But in any event, I think if you read this, you understand that this particular section and element required for the notice to appear is not jurisdictional. So you didn't exhaust that before the BIA, correct? No. So how do we have appellate jurisdiction to consider this statutory argument? Well, in any case in which the jurisdiction of the court is challenged and the court has jurisdiction to decide whether it has jurisdiction over that claim, and it always has to be adjudicated as raised, no matter where. I mean, even if judgment had already been issued in this case, and we filed a motion to dismiss for lack of jurisdiction, the court would be required to consider that motion. Okay. Do you want to proceed with the rest of your argument? Yes. All right. So what I didn't mention this, but I will say this again, that the simply applying the ordinary rules of statutory construction, if one element in the section is non-jurisdictional and the others, there's no statement about that as to the other elements, then they are jurisdictional. If they are jurisdictional, then a notice to appear that does not have all of the elements in it that are required by the statute, it can be dismissed because it does not confer jurisdiction on the court. Let's see. So I have to say by that part of my argument, then to the second part, your honor, as to the withholding claim, I will say this, that the term generalized criminal activity is just a screen that allows the courts not to consider what the violence that's happening in Mexico means. It's so far beyond generalized criminal activity that it's, I don't even know why that term is used. It really, according to experts on civil war, there's a civil war in Mexico right now. And I think if the court, if the lower courts factored that into their considerations, there could be a very different view of the people who actually are refugees from this civil war. In any event, what I think should happen in this case is it should be remanded both for the BIA to consider the jurisdiction issue and also for the BIA to consider, and maybe even send it back to immigration just to consider whether the violence that's happening in Mexico is not generalized criminal activity, but is in fact a civil war that's occurring and that the people who are affected by it are refugees from a civil war. And they should be considered in that regard when it comes to their claims for either asylum, withholding, or tax. And I'll reserve the rest of my time. Thank you. Very well. We'll hear from the government. You're muted, I'm afraid. Sorry. Now I can't see you. Can you hear me? Yes, we can see you too. Okay, now I can see you. Sorry. My name is Michelle Sarkar. I'm here representing the Department of Justice and Immigration. In this case, there's three issues essential that we set out in our brief. First, whether substantial evidence supports the agency's conclusion that petitioner did not establish a clear probability of future persecution in Mexico on account of an imputed membership in a particular social group of the family of the drug lord, or on account of an actual imputed anti-cartel political opinion. So essential for this issue is that there was no, the board assumed essentially that this was a particular social group, but said there was no nexus that was shown. That first of all, there was no past persecution of this petitioner. He left Mexico when he was two years old. His claim is that he had two uncles that were killed a year after the drug lord was killed, who had the same last name as the drug lord. And his family there believes that he would be in danger because he also has the same last name as the drug lord. But there's no evidence as in the record as to, and he admits that he doesn't know how or why his uncles were killed. He just bases his fear on his grandparents' statements to his father that they think it's they have the same last name, but that's pure speculation. There's no actual evidence to back that up. Then I would also point out that the grandfather, his wife, and the aunts of the petitioner with the same last names are all there, and there's no evidence that they had been armed. Also the daughter of the drug lord actually still lives in Mexico, and there's no evidence that she's been targeted for harm. So I believe that there's substantial evidence supporting the government's position on this issue, and certainly the evidence doesn't compel a contrary conclusion than the boards that no nexus was shown for purposes of withholding. Then another issue that's presented in the briefs is whether petitioner did not establish that it's more likely than not that he would be tortured at the instigation of or with the consent or acquiescence to include the concept of willful blindness of a public official or another person acting in an official capacity upon removal to Mexico. Again, he hasn't shown any past harm to himself in Mexico, and for all the same reasons as before with regard to the withholding claim, he hasn't shown that he's likely to be targeted for torture if he returns to Mexico. The board acknowledged that there's a lot of violence going on in Mexico, but again, he hasn't shown that he would specifically be targeted and that the government and public officials would acquiesce in him being tortured. The third issue that we presented in the briefs is whether the IJ and the board, well, whether the board and the IJ did not abuse their discretion in denying his motion for continuance, where his motion was based on his desire to apply for relief for which he was not at that time eligible when he was before the IJ. He wanted his continuance based on the intent to marry his girlfriend once she had apparently a visa petition filed by the father for her and that was not adjudicated as pending. That's my understanding. And then also, or that they intended to file one if they hadn't filed one. Another possible basis was he could have cancellation if he had a U.S. citizen child. So apparently his fiancee, he said, was expecting, but she had previously lost a child during a pregnancy and there's no, at the time of the hearing, the child was not yet born, wasn't born in the U.S. I was floored by that statement. I'm reading from the brief. Indeed, unfortunately, not all expected babies arrive. That's true. That's true. But if you have to wait until after the baby arrives and you want the continuance so you can see, that doesn't make any sense. And then it goes on to say in the brief, because whether the baby would be born in the United States is essentially speculative, when you have these other immigration proceedings pending or documents filed on behalf of the fiancee, it seems to me that that reasoning just can't hold water. Because under that reasoning, you would never grant a continuance because a baby is coming, because a baby might not come. And so what you're demanding by that standard, it seems to me, is you don't get the continuance, you lose that opportunity, and then you have to wait to see if a baby's born. Well, by then it's too late. So maybe I'm missing something, but I tried to understand that rationale and I could not get my head around it. If I may. Well, two things. One, his request for a continuance, he knew about the hearing for several years and the request that he was going to have a hearing. The request for continuance was the day of the merits hearing. So what's wrong with that? That happens all the time. Well, the request happens all the time. You don't say the request is invalid simply because it's made at the hearing. Now, certainly that may factor into the exercise of discretion. Well, yes, I think that's what I'm trying to say. It did factor in the judge's exercise of discretion here because he basically said that they have a certain rules in the immigration court. They're going to make motions. They have to make them a certain amount of time ahead of the merits hearing. So this was the day of the hearing. So, one, it violated those rules, but also... I have to tell you, we get thousands and thousands of immigration cases, and in almost all of them, there's a motion to continue on the day of the hearing that's granted. So, I mean, you can't really say that it doesn't happen. I'm not saying it doesn't happen. I'm saying it's in the discretion of the immigration judge. So here, the last-minute motion combined with no actual opportunity to apply for any relief at that time because he didn't have the uses of wife. He didn't have a use as a child. The fiance, they weren't married yet, and so he didn't meet any of those conditions. Plus, he did not present either an application, which I know he couldn't file an application at that time because he didn't meet the requirements yet, but he could have presented an application meeting the other things, like what is going to be the harm to these individuals. They have to show exceptional and unusual harm to qualify for cancellation, for example, and so he could have attached or he could have submitted, this is what I will file the application. This is the harm I think there's going to be because it's not just that I'm going to have a use as a child. There's the harm aspect as well that he has to qualify for, and then as to the fiance, if they did marry and she got her status as a LPR, well, there's a visa petition that in order to adjust, it's not just that you know, it has to be an immediately available visa, and Mexico has a huge backlog for such visas, so the adjustment wouldn't be right away necessarily, so I wanted to say that. As for the immigration court, I'm going to rely on our response pleading, but I just wanted to point out that in Karen Giffey and I think Furman was the other case, the court has said that the regulations govern the jurisdiction of the immigration courts, and he didn't exhaust, he could have made these arguments in his brief to the court. He waived the arguments in his briefs to this court, and he didn't exhaust them well before the immigration court and the board. Thank you, counsel. Thank you. Thank you, your honors. I'm not coming up. Why is that? Well, we can see you and hear you. Okay, fine. I don't need to see myself. The argument that the court does not have jurisdiction is never waived. It's not waived by implication. It can't be waived. I can't waive that issue. It has to be, if it's raised, it has to be adjudicated, and that's where we are with that. I wasn't required to exhaust it before the BIA or an immigration court or anywhere else. So, I'm hoping the court will certainly make a ruling on this, not one that's just based on the fact that this was not exhausted at the BIA, but on its merits. And thank you. I have nothing else to offer the court. Thank you very much. Let me ask you this. Has your client applied for cancellation of removal? Let me take a look at his file. Give me one second. Okay. It appears that he has not applied for cancellation of removal yet. Okay. Thank you. The case just heard will be submitted for decision.
judges: THOMAS, McKEOWN, Molloy